## Universal Film Exchanges, Inc. *v.* Viking Theatre Corporation, Appellant.

Argued November 18, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and MCBRIDE, JJ.

reargument refused June 14, 1960.

30

34

38

*Harold E. Kohn,* with him *Aaron M. Fine,* and *Dilworth, Paxson, Kalish, Kohn & Dilks,* for appellant.

*Arlin M. Adams,* with him *Bancroft D. Haviland, Josephine H. Klein, William A. Schnader,* and *Schnader, Harrison, Segal & Lewis,* for appellee.

OPINION PER CURIAM, March 22, 1960:

Judgment affirmed on the opinion of President Judge HAGAN.

———

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

There are lawyers who believe, especially if they have lost a decision before a court *en banc* hearing post-trial arguments, that the two judges who sit with the trial judge are mere ornamentation and that the issue as to whether the controverted verdict or judgment will be affirmed or reversed is decided by the Trial Judge himself, unaided and uninfluenced by his two sitting colleagues. I believe that this notion is an erroneous one. Certainly I can testify from my own experience as a trial judge (for twenty years) that the whole court *en banc* participates in the decision which disposes of motions for judgment n.o.v., or for a new trial.

I fear, however, that some judges, inadvertently, allow this erroneous notion to gain currency.

This case, for instance, was heard without a jury by a judge who rendered a judgment in favor of the plaintiff, Universal Film Exchanges, against the defendant, Viking Theatre Corporation, in the sum of $17,157.13. The defendant filed exceptions to the rulings made by the Trial Judge. When the case came up for argument on May 17, 1959, the Trial Judge was

not present and not available. However, when the decision was handed down, it developed that the Opinion supporting the position taken by the Trial Judge at the trial was written by the Trial Judge himself, who, as indicated, did not form part of the court *en banc*.

The object of a court *en banc* is to give the Trial Judge an opportunity to reflect on the rulings he made at the trial, aided by two other judges who are completely impartial, since their rulings and assumedly their prestige for deciding correctly are not in issue. But here it would seem that the court *en banc* was made up of three shadows. The Trial Judge was absent and the two judges who did sit had nothing to do with the decision which eventually disposed of the case.

If one of the two judges who were present at the argument had written the opinion, there could be no legitimate complaint, because it could be assumed that he and his hearing colleague had decided the motion for a new trial on the record and on what both of them had heard. Unfortunately this was not the case.

It is amazing to me that my colleagues on this Court make no comment on the contretemps which I have here outlined and which is described in appellant's brief. This Court is satisfied to affirm the decision of the lower Court on the Opinion written by the Trial Judge who dismissed all exceptions made to his rulings, without listening to a word uttered by defendant's counsel as to why these exceptions should have been sustained.

Every principle of punctilious procedure dictates that a Trial Judge who is charged with error should attend the argument to listen to the reasons which the complaining party advances as to why he should alter his decision. It would not be enough for a Trial Judge to say that he is not available for the argument or that it would be inconvenient for him to attend the argument. Unless the Trial Judge is deceased or dis-

abled, a proper regard for the rights of the litigants demands that he be present to listen to the complaints of the appealing party.

It is, of course, self-evident that no court can hope to enjoy the enthusiastic approval of all the contesting parties in any particular case because a decision can only completely satisfy one side and thus it happens, human nature being what it is, that the losing party frequently expresses displeasure with the deciding tribunal. Much of this displeasure may be founded on criticism which is completely lacking in fact, logic or common sense. But to the extent that unjust criticism may not have the appearance of justifiable censure, the Courts should make every effort to avoid situations which may have an equivocal aspect. In this case the deciding tribunal permitted a situation which could easily have been avoided. It could have continued the argument until the Trial Judge was available or the Opinion could have been written by one of the two Judges who heard the argument.

I can well believe that what happened here was not unusual. It probably happens in other Courts that the Trial Judge does not sit on the Court en banc and then writes the Opinion of the Court. But I assert it is a practice that has little to commend it.

In writing this Dissenting Opinion I am not directing any criticism of a personal nature to any of the three Judges, who are judges of unquestioning integrity. What probably occurred is that, after the two hearing Judges heard the arguments they conferred with the Trial Judge and then he, upon what he already knew, plus what he gleaned from the briefs, plus what came to him via his two colleagues, wrote the Opinion. This would show a desire on the part of all the judges conscientiously to discharge their responsibilities in the matter. But I still believe the procedure to be faulty and one which should be abandoned.

A lawyer, and especially the losing lawyer, who receives an Opinion written by someone who did not hear what he had to say, may go through life with the haunting persuasion that, had the author of the Opinion heard his argument, he might have written differently.

Thus, repeating that I intend to cast no reflection on the three judges in this case, I voice the hope that a court en banc will always have as one of its members the Judge who will eventually write the Opinion.